IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



ROSETTA GREENE, §
 §
         Plaintiff, §
 §
VS. § NO. 4:18-CV-247-A
 §
SANTANDER CONSUMER USA, INC., §
 §
         Defendant. §

MEMORANDUM OPINION AND ORDER

Came on for consideration the first amended motion of defendant, Santander Consumer USA, Inc., for summary judgment. The court, having considered the motion, the response of plaintiff, Rosetta Greene, the reply, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff sues under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA"). She says that defendant discriminated against her because of her disability, firing her instead of allowing her additional time off from work. Doc.[1] 1.

II.

Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy Sys., Inc. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597; <u>see also</u> <u>Mississippi Prot. & Advocacy Sys.</u>, 929 F.2d at 1058.

III.

Grounds of the Motion

Defendant urges three grounds in support of its motion: (1) plaintiff cannot establish a case of wrongful termination; (2) plaintiff cannot establish a failure to accommodate claim; and (3) there is no evidence to support punitive damages.

---

[2] In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

IV.

Facts Established by the Evidence

The summary judgment evidence[3] establishes the following:

Defendant's associate[4] handbook sets out in detail its policies regarding equal employment opportunity, anti-harassment and anti-discrimination, workplace accommodation (to comply with the ADA), and Family and Medical Leave Act ("FMLA"), among other things. Doc. 23 at APP9-APP17. Under the workplace accommodation policy, defendant will provide a reasonable accommodation for a qualified individual with a disability, except where such accommodation would create an undue hardship for defendant. Id. at APP3, APP13. Under the FMLA policy, associates can receive up to 12 workweeks (or 480 hours) of intermittent or consecutive unpaid leave within a twelve month period provided that they have worked at least 1250 hours during the previous twelve months. Id. at APP3, APP16-APP17.

On November 1, 2009, defendant[5] hired plaintiff as an early stage account manager in its North Richland Hills facility. Doc. 23 at APP3. Defendant classifies collections by the number of

---

[3]Defendant filed objections to plaintiff's summary judgment evidence. Doc. 26. As is its custom, the court is not striking any evidence, but rather giving it whatever weight, if any, it may deserve.

[4]Defendant refers to its employees as associates and the court will endeavor to do the same.

[5]Plaintiff does not dispute that defendant is a consumer finance company focused on vehicle finance and third-party servicing.

4

days the payment has been past due. "Early stage" accounts are those no more than 35 days past due. Id.

Each day, teams of early stage account managers make calls from an automated dialer to borrowers whose accounts are past due. The more early stage account managers who are at work making calls, the more productive the team is. Being at work is an essential function of the job of early stage account managers. When a team member does not come to work, more calls must be made by the rest of the team.[6] The longer a loan is outstanding, the less likely it is to be paid. As a result, delays in collection caused by associate absence can be costly. Further, other associates may fall behind because they have to carry an extra workload, which could impact their bonus potential. Doc. 23 at APP3-APP4, APP39-40.

From the time plaintiff was hired by defendant, she requested and received workplace accommodations and FMLA leave for various medical conditions.[7] Plaintiff requested and was approved for FMLA leave for the period of December 30, 2015, through January 13, 2016. Defendant also accommodated plaintiff by allowing her to work a reduced workweek of 32, instead of the

---

[6]Plaintiff's absences affected other associates, causing them to have to take on what she normally would have handled. Doc. 25 at APP 003- APP 004. They complained about plaintiff's work schedule. Id. at APP 003.

[7]Plaintiff was diagnosed with multiple sclerosis in 2007. Doc. 25 at APP 028.

standard 40, hours typically required for an early stage account manager. Doc. 23 at APP4. In the fall of 2016, plaintiff requested: intermittent FMLA leave from October 11, 2016, through April 10, 2017; intermittent leave under the ADA from October 11, 2016, through December 31, 2016, for six instances every 30 days (up to 3 days per episode), and a reduced work schedule of 32 hours per week; intermittent leave under the ADA from September 22, 2016, through March 22, 2017, for two instances every 18 hours (up to three hours per episode); intermittent leave under the ADA from September 22, 2016, through March 22, 2017, for one instance every 7 days, up to an entire day per episode; and continuous leave under the ADA from December 14, 2016, through January 25, 2017. Id. at APP4-APP5.

Plaintiff's multiple leave requests were brought to the attention of Kristen Lagunes ("Lagunes"), the human resources manager for the facility where plaintiff worked. Lagunes determined that plaintiff could not take FMLA leave because she had not worked the minimum number of hours to qualify. Defendant approved plaintiff's request for continuous leave under the ADA from December 14, 2016, through January 25, 2017. Other requests were denied.[8] Doc. 23 at APP5.

---

[8]Lagunes later determined that for the thirteen month time period prior to plaintiff's termination, she was off of work for approximately 860 hours and actually worked approximately 882 regular hours
(continued...)

6

Plaintiff was expected to return to work January 26, 2017. On January 24, 2017, defendant received a fax from plaintiff's doctor stating, "[Plaintiff] may not return to work at this time. She has healed from her GYN surgery BUT is to undergo a hernia surgery in four days time. The surgeon performing the hernia will release her to work thereafter." Doc. 23 at APP6, APP53. Defendant notified plaintiff that it would not extend her leave. Id. at APP6. Defendant offered plaintiff the chance to resign so that she would be eligible for rehire. Id. at APP46. She did not return to work and Lagunes approved her termination for failing to return to work after her ADA leave expired. Id. at APP6. Failure to return to work was the sole reason for the termination. Id. at APP006; Doc. 25 at APP 008.

V.

## Analysis

To establish a prima facie case of wrongful termination under the ADA, plaintiff must show that she: (1) suffers from a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment action on account of her disability. Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 479 (5th Cir. 2016). If plaintiff meets her burden, defendant must

---

[8](...continued)
and five holiday hours. Doc. 23 at APP5.

proffer a legitimate, nondiscriminatory reason for the adverse employment action. Id. The burden, however, is only one of production, not persuasion, and involves no credibility assessment. Green v. Medco Health Sols., LLC, 947 F. Supp. 2d 712, 721 (N.D. Tex. 2013), aff'd, 560 F. App'x 398 (5th Cir. 2014). If defendant articulates such a reason, plaintiff must present evidence that the articulated reason is pretextual and that discrimination was a real reason for defendant's decision. Delaval, 824 F.3d at 479-80.

The ADA gives the employer significant latitude in determining essential functions of a position. McDaniel v. IntegraCare Holdings, Inc., 901 F. Supp. 2d 863, 872 (N.D. Tex. 2012). Here, defendant maintains that plaintiff was not qualified for the position of early stage account manager, because she was unable to attend work on a regular basis. The summary judgment evidence establishes that attendance was essential to the position. Plaintiff herself testified that coming to work was essential and necessary. Doc. 23 at APP40. Team members sat side-by-side and collaborated with one another as telephone calls were taking place. Id. at APP39-APP40. Because of plaintiff's inability to be at work, she was not qualified for her position. Amsel v. Tex. Water Dev. Bd., 464 F. App'x 395 (5th Cir. 2012).

Plaintiff tries to distinguish her situation from that in Amsel, but she has not pointed to probative summary judgment evidence to raise a genuine fact issue.[9] She refers only to her own deposition testimony that she "recollect[ed] that [she] submitted Dr. England's doctor's notes as well as Dr. Smith's doctor's notes" to defendant.[10] Doc. 25 at APP 022. Dr. England is the doctor who authored the note described supra stating that plaintiff would not return to work, that she was to undergo further surgery, and that the surgeon performing that surgery would release her to work thereafter. Doc. 23 at APP53. As best the court can tell, Dr. Smith is nowhere referenced in the summary judgment evidence. Had he been the hernia surgeon and had he given a date for plaintiff's release to work, presumably that would have been included in the record, along with evidence that his note was transmitted to defendant. There is no such evidence in the record. Thus, like the plaintiff in Amsel, plaintiff was not at work for an extended period and there was no indication

---

[9] The court notes that contrary to the undersigned's judge-specific requirements set forth in the May 3, 2018 status report order, Doc. 12 at 7-8, plaintiff did not highlight any of her summary judgment evidence. The court has nevertheless considered the materials she cites.

[10] The follow-up questions to plaintiff never elicited that she had made a specific request to defendant for further accommodation. Rather, the questions seemed to imply that the doctors' notes would have reflected plaintiff's request for another six weeks to recuperate from surgery, which makes no sense. Doc. 25 at APP 022. In a later argument, plaintiff says that she "was able to provide a definite time she would return from surgery," Doc. 24 at 9, but does not say that she did provide that information to defendant. And the record citation she supplies, Doc. 25 at APP 022, does not support her description of the testimony.

9

when she might be able to return. She was not qualified and cannot make out a prima facie case. See Allen v. Babcock & Wilcox Tech. Servs. Pantex, LLC, No. 2:120CV-00225-J, 2013 WL 5570192, at *6 (N.D. Tex. Oct. 9, 2013)(citing cases).

Even assuming that plaintiff was qualified, defendant says that it terminated her because she failed to return to work when her leave expired. A failure to return to work is a legitimate and nondiscriminatory reason for terminating a disabled employee. See Owens v. Calhoun Cnty. Sch. Dist., 546 F. App'x 445, 448-49 (5th Cir. 2013). A plaintiff who is unable to attend is unable to perform. Vazquez v. Laredo Transit Mgmt., Inc., No. L-06-cv-94, 2007 WL 2363152, at *10 (S.D. Tex. Aug. 16, 2007). Plaintiff has not shown that defendant's professed reason for her termination was a pretext for discrimination. In fact, the testimony she cites does not support her allegations.[11] And, she cites no authority to support her position regarding pretext in any event.

To establish a failure to accommodate claim, plaintiff must show that she was a qualified individual with a disability; her

---

[11]For example, plaintiff says that defendant did not participate in an interactive or "give-and-take" process, Doc. 24 at 7, but the citations do not support the proposition. Rather, the testimony is of an employee who knew nothing about plaintiff or what had actually transpired. She played no role except to process plaintiff's termination. Doc. 25 at App 008. And, plaintiff alleges that the termination was pretextual because defendant was not harmed by accommodating plaintiff, Doc. 24 at 10, whereas the testimony she cites is that plaintiff's schedule caused other associates to have to take on plaintiff's work and that they complained. Doc. 25 at APP 003, App 004. Plaintiff implies that there were no complaints about her, saying that she "had no write ups for attendance or poor job performance," Doc. 24 at 10, but the testimony was that plaintiff's tardiness was a consistent problem. Doc. 25 at APP 003.

10

disability and its limitations were known by defendant; and, defendant failed to reasonably accommodate the disability. Feist v. Louisiana, 730 F.3d 450, 452 (5th Cir. 2013). It is a violation of the ADA to fail to reasonably accommodate an employee unless the employer can demonstrate that the accommodation causes an undue hardship. Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 681-82 (5th Cir. 1996).

Here, as previously discussed, plaintiff has not shown that she was a qualified individual. In response to this ground of the motion, she focuses on the alleged failure of defendant to participate in the interactive process to accommodate her.[12] Doc. 24 at 11. But, as defendant notes, one who is not qualified to perform the essential functions of a job is precluded from complaining about the interactive process. Holland v. Shinseki, No. 3:10-CV-0908-B, 2012 WL 162333, at *9 n.7 (N.D. Tex. Jan. 18, 2012). See also Mason v. Avaya Commc'ns, Inc., 357 F.3d 1114, 1124 n.4 (10th Cir. 2004). In other words, one who cannot perform an essential function of the job, e.g., being present, is not otherwise qualified and not protected under the ADA. Jones v. Kerrville State Hosp., 142 F.3d 263, 265 (5th Cir. 1998).

Finally, defendant urges that there is no evidence to support an award of punitive damages even if plaintiff could

---

[12] As previously noted, the citations to the record do not support plaintiff's allegations.

11

proceed with her claims. Punitive damages are only available in ADA cases of intentional discrimination where the defendant acted with malice or reckless indifference. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999). Plaintiff offers a one-sentence response that does not cite evidence to raise a genuine issue of material fact in this regard.[13] Doc. 24 at 12.

VI.

Order

The court ORDERS that defendant's first amended motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on her claims against defendant; and that such claims be, and are hereby, dismissed.

SIGNED January 30, 2019.

_____
JOHN McBRYDE
United States District Judge

---

[13] Again, the cited reference does not support the contention asserted.